# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN SHAFFER and | : | Civil Action |
| JENNIFER SHAFFER, h/w | : | |
| 110 Parkhurst Street | : | |
| Elkland, PA  16920 | : | |
| | : | Case No. _____ |
| v. | : | |
| | : | |
| FADI BADER SWEISS, MD | : | |
| 740 High Street, Floor 3 | : | Jury Trial Demanded |
| Williamsport, PA 17701 | : | |
| | : | |
| KELLY L. FARRELL, PA-C | : | Electronically filed |
| 740 High Street, Floor 3 | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| SUSQUEHANNA PHYSICIAN | : | |
| SERVICES d/b/a The Neuroscience | : | |
| Center | : | |
| 1201 Grampian Boulevard | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| BRITTANY T. GRUBB, RN | : | |
| 700 High Street | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| UPMC WILLIAMSPORT | : | |
| 700 High Street | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| c/o United States Attorney for the | : | |
| Middle District of Pennsylvania | : | |
| 240 W. 3rd Street | : | |
| Williamsport, PA  17701-6465 | : | |
| | : | |

## CIVIL ACTION- COMPLAINT

Plaintiffs, by and through undersigned counsel and in support of their Complaint, allege the following:

## JURISDICTION AND VENUE

1.     This action arises under 28 U.S.C. §1346(b) as Plaintiffs seek recovery against the United States of America for personal injuries.

2.     Jurisdiction against the non-federal defendants is obtained through 28 U.S.C. §1367 as all matters under both federal and state claims arise from a common nucleus of operative facts; the combined negligence of the non-federal defendants and of the United States of America, individually and/or by and through their agents, assigns, contractors and/or employees, breached the standard of care regarding the treatment of Plaintiff John Shaffer's lower left extremity resulting in a below the knee amputation.

3.     The exercise of supplemental jurisdiction pursuant to 28 U.S.C. §1367 will advance judicial economy, convenience and fairness to the parties because it will alleviate the need for two parallel actions; one in the Court of Common Pleas of Lycoming County against the non-federal defendants and the other in the United States District Court for the Middle District of Pennsylvania against the United States of America, both of which would necessarily involve the same damages which are not separable/severable.

2

4.      As respects the claim against the Defendant United States of America,

Plaintiffs have complied with the requirements of the Federal Tort Claims Act 28

USCS § 2671 et seq.; they duly filed their initial Notice of Claim on May 4, 2022

(green card signed on May 11, 2022) and, at the request of the United States of

America, supplemented the Notice of Claim on June 17, 2022; six months have

lapsed since the federal government has had a full, fair and complete opportunity

to review, evaluate and/or approve or deny Plaintiffs' claim.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because

the events giving rise to Plaintiffs' claims occurred within the territorial limits of

the United States District Court for the Middle District of Pennsylvania.

**<u>PARTIES</u>**

6.      Plaintiffs John Shaffer and Jennifer Shaffer are adult individuals and

citizens of the Commonwealth of Pennsylvania residing at 110 Parkhurst Street,

Elkland, Pennsylvania, 16920.

7.      Defendant Fadi Bader Sweiss, MD (hereinafter "Sweiss") is an adult

individual who, at all times material and pertinent to this action, was a doctor of

medicine, duly licensed, by and pursuant to the laws of the Commonwealth of

Pennsylvania as a neurosurgeon; his principal office where he regularly conducted

his business, engaged in the practice of his profession was at the above address; he

treated the Plaintiff John Shaffer on Defendant UPMC's premises.

8.      Defendant Kelly L. Farrell, PA-C (hereinafter "Farrell") is an adult individual who, at all times material and pertinent to this action, was a physician's assistant duly licensed to practice her profession in, by and pursuant to the laws of the Commonwealth of Pennsylvania; her principal office where she regularly conducted her business, engaged in the practice of her profession and treated the Plaintiff John Shaffer was at the above address; she treated the Plaintiff on the Defendant UPMC's premises.

9.      Defendant Susquehanna Physician Services d/b/a The Neuroscience Center (hereinafter "Susquehanna Physician Services") is a Pennsylvania corporation duly created and regulated by the laws of the Commonwealth of Pennsylvania where, at the above address, it provides medical care and employs physicians and other healthcare providers to dispense medical care and treatment to members of the general public and in such capacity may also have employed the Defendants Sweiss and Kelly Farrell, as well as Charlie Fohringer, PA as they provided care and treatment to the Plaintiff John Shaffer.

10.     Defendant Brittany T. Grubb, RN (hereinafter "Grubb") is an adult individual who, at all times material and pertinent to this action, was a nurse, duly licensed to practice her profession in, by and pursuant to the laws of the Commonwealth of Pennsylvania; where she regularly conducted her business and

engaged in the practice of her nursing profession treating the Plaintiff John Shaffer within the Defendant UPMC Williamsport facilities.

11.    Defendant UPMC Williamsport (hereinafter "UPMC") is a Pennsylvania corporation duly created and regulated by the laws of the Commonwealth of Pennsylvania where, at the above address, it operated a hospital and medical offices, employed physicians, physician assistants, nurses and others to dispense medical care and treatment to members of the general public and, in such capacity, employed the Defendant Grubb and the two individuals with whom the Plaintiff Jennifer Shaffer spoke with the evening of April 2, 2021 and during the day on April 3, 2021 and employed the Defendants Sweiss, Kelly Farrell as well as Charlie Fohringer, PA.

12.    Defendant United States of America is a proper party to this case pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, as owner of North Penn Comprehensive Health Services, a Federally qualified healthcare center who employed Kelly S. Carr, CRNP.

## COMMON FACTUAL ALLEGATIONS

13.    On or about February 24, 2021, the Plaintiff John Shaffer came under the care of Defendant Sweiss who ultimately recommended and agreed to perform an L4-5 microdiscectomy upon John Shaffer to alleviate back pain and lower extremity radicular pain and discomfort.

14.     During the time that Plaintiff John Shaffer treated with Dr. Sweiss, his staff and others, Dr. Sweiss was held out by the Defendant UPMC as its employee; Dr. Sweiss wore a name badge indicating he was a UPMC employee; upon information and belief, he was advertised as such on the internet and he was reasonably perceived and believed to be an agent of the Defendant UPMC by the Plaintiffs John and Jennifer Shaffer at all times relevant.

15.     At all times relevant, the Defendant UPMC held out the Defendant Sweiss and his office staff to the public and to the Plaintiffs, in particular, as its employees/agents.

16.     Several years before this surgery, the Plaintiff John Shaffer suffered a deep vein thrombosis requiring the insertion of a stent in his left lower extremity, he was still on Plavix prescribed by his vascular surgeon Dr. Umashankar Ballehaninna when he became a patient of Dr. Sweiss.

17.     Defendant Sweiss spoke with Plaintiff John Shaffer prior to his lumbar surgery and advised he should stop Plavix one week prior to his laminectomy.

18.     It is believed and therefore averred that individuals in Defendant Sweiss' office also advised staff at North Penn Health Services to advise Plaintiff to withhold Plavix and they did so after communication from Defendant Sweiss' office.

19.    On or about April 2, 2021, John Shaffer underwent L4-5 laminectomy at the Defendant UPMC Williamsport.

20.    Prior to surgery on April 2, 2021, the Defendant Sweiss issued pre-operative orders regarding the application of compression devices to both of Mr. Shaffer's lower extremities.

21.    As a result of Defendant Sweiss' order, a set of compression stockings was placed on Mr. Shaffer's lower extremities for approximately 10 to 12 hours on April 2, 2021.

22.    This use of compression stockings was contraindicated in a person such as the Plaintiff who, as described above, had vascular problems in his left lower extremity.

23.    At all times relevant, the Defendants Sweiss and agents of the United States of America should have deferred the issue regarding Plavix to Dr. Ballehaninna but never contacted Dr. Ballehaninna to seek his opinion regarding the discontinuation of Plavix or the length of time Plavix should have been discontinued and/or whether another antiplatelet should have been prescribed and/or whether other precautions should have been taken.

24.    After surgery, on or about April 2, 2021, Defendants Grubb and Farrell should have but failed to remove the compression stockings from the

Plaintiff's lower extremities before he was discharged; instead, the Defendant Grubb advised Plaintiffs the compression stockings must remain on for 24 hours.

25.    After surgery on April 2, 2021, the Plaintiff John Shaffer was discharged without a full and complete physical assessment of his left lower extremity which, at the time of discharge, was cold to the touch and painful; as a result, discharge was contraindicated at the time nonetheless Plaintiff was discharged.

26.    On or about April 2, 2021, at approximately 10:00 p.m., Plaintiff Jennifer Shaffer removed the compression stockings from her husband's legs because his left leg was cold to the touch and was extremely painful; upon removal of the compression stockings, Mrs. Shaffer noticed her husband's left leg looked gray and she was concerned the blood flow could become compromised.

27.    On or about April 2, 2021 at approximately 10:00 p.m., Plaintiff Jennifer Shaffer called the telephone number provided to them in the UPMC discharge papers concerned about the condition of her husband's left lower extremity; she conveyed her concerns to a woman on the phone who identified herself as Jessica who then, after listening to the description of the condition of John Shaffer, advised Plaintiff Jennifer Shaffer her husband's condition should improve within three to five days after surgery.

28.     On or about Saturday, April 3, 2021, since her husband's leg was still cold to the touch and because he was still experiencing pain in his left lower extremity, Jennifer Shaffer again telephoned and spoke with nursing staff at UPMC and repeated her husband's symptoms and was now told the symptoms should resolve within three to five days after surgery but, if not, she was instructed to call the primary care physician; she specifically discussed resumption of Plavix with the nurse on the phone who advised while it was not included in his discharge paperwork, he should resume taking Plavix on Sunday, April 4, 2021.

29.     On or about April 5, 2021, Jennifer Shaffer, as directed by UPMC staff, called Plaintiff's primary care physician, Dr. Phyllis Scott, and requested that her husband be examined that day.

30.     On or about April 5, 2021, Jennifer Shaffer called the office of Dr. Sweiss to advise that her husband had ongoing symptoms and she had an appointment with their primary care physician; she was told by personnel in Dr. Sweiss' office to follow through with that visit.

31.     Employees in Defendant Sweiss' office, having been made aware by Plaintiff's wife and by Kelly Carr that Plaintiff was having difficulties with his left lower extremity and that he was going to be sent for doppler scans, encouraged CRNP Carr to restart her patient's Plavix.

32.     On or about April 5, 2021 at or about 11:20 a.m., Plaintiff's left lower extremity was partially evaluated by CRNP Kelly Carr at North Penn Comprehensive Health Services who, after consultation with Charlie Fohringer in Dr. Sweiss' office as to whether the Plaintiff could lay prone during an ultrasound and having been given approval by Dr. Sweiss' staff member Charlie Fohringer, Plaintiff's PCP ordered a venous and an arterial ultrasound of Plaintiff's left lower extremity.

33.     Charlie Fohringer, PA was, or should have been aware that Plaintiff John Shaffer was to be sent for ultrasounds of his left lower extremity but failed to inform Dr. Sweiss and failed to inform Plaintiffs' primary care physician to notify him immediately of the results of the ultrasounds.

34.     Neither Kelly Carr nor any employee of Defendant UPMC within Dr. Sweiss' office, including Dr. Sweiss himself and/or Charlie Fohringer advised Plaintiff to immediately proceed to the nearest emergency room after being advised of the result of the ultrasounds on April 5, 2021 even though, by that time, Plaintiff John Shaffer had been experiencing pain in his left lower extremity for three days while his physical exam and symptoms were indicative of significant evolving vascular compromise in his left lower extremity.

35.     The results of the venous duplex scan of the left lower extremity showed no evidence of DVT whereas the arterial duplex scan of the left lower

extremity showed moderate to severe occlusive arterial disease proximal to the left common femoral artery and severe occlusive arterial disease within the proximal calf region; the results were immediately called to the Kelly Carr's office; neither Kelly Carr nor anyone in her office notified anyone in Dr. Sweiss' office of the results of the ultrasounds on their patient.

36.    Upon receiving the results of the arterial ultrasound, a nurse in Kelly Carr's office telephoned Jennifer Shaffer and advised she should schedule an appointment with her husband's vascular surgeon, Dr. Ballehaninna but failed to tell the Shaffers to schedule an immediate visit and/or to immediately proceed to the nearest emergency room.

37.    On or about April 6, 2021, Jennifer Shaffer contacted Dr. Sweiss' office to advise they had an appointment scheduled the next day with Dr. Ballehaninna; despite being advised directly by the Plaintiff's wife her husband was going to be seen by a vascular surgeon after having received notice about his post-operative complaints, it is believed and therefore averred that either no one advised Dr. Sweiss of the continuing complaints and the need for him to become involved or he was advised and he did not take appropriate action.

38.    Upon information and belief, Kelly Carr's office failed to communicate to the individuals they had previously spoken to in Dr. Sweiss' office

the results of the ultrasounds, all of which should have been extremely concerning and should have been immediately communicated to Dr. Sweiss.

39.   On or about April 6, 2021, Jennifer Shaffer called Dr. Sweiss' office to advise they had an appointment to be evaluated by his vascular surgeon the next day; despite Dr. Sweiss' office being aware of multiple calls regarding their patient's post-operative complaints and now his pending visit to the vascular surgeon, no one from Dr. Sweiss' office reached out to Plaintiffs nor did Dr. Sweiss himself contact either Plaintiff.

40.   Because the Plaintiff was not advised to go to the emergency department but instead advised to visit the vascular surgeon, relying upon the advice of a nurse in Kelly Carr's office, Plaintiff waited until the 2:00 p.m. April 7, 2021 visit that was previously scheduled with Dr. Ballehaninna's office.

41.   On April 7, 2021, within hours of being evaluated by Dr. Ballehaninna, he initiated surgery on Plaintiff's lower extremity but ultimately was unable to save the limb and the Plaintiff John Shaffer underwent a left lower extremity amputation on or about April 14, 2021.

42.   At all times relevant, the Defendants Sweiss, Farrell and Charlie Fohringer were agents, ostensible and/or otherwise, were employees, contractors and/or representatives of the Defendant Susquehanna Physician Services and the

Defendant UPMC, acting by and on behalf of said Defendants and under their control.

43.    At all times relevant, Kelly Carr was an agent, ostensible or otherwise, employee, contractor and/or representative of North Penn Comprehensive Health Services, a Federally qualified healthcare facility.

44.    At all times relevant, Defendant Grubb was an agent, ostensible or otherwise, employee, contractor and/or representative of the Defendant UPMC Williamsport.

45.    At all times relevant hereto, the Plaintiffs relied upon medical advice they received from the Defendants and their agents identified herein and at no time did Plaintiffs act or fail to act appropriately nor were they responsible for the amputation of Mr. Shaffer's leg below his knee.

46.    At all times relevant hereto, the Defendant UPMC held out the Defendant Sweiss, Farrell and Fohringer as employees and/or agents and a reasonably prudent person in Plaintiffs' position would be justified in believing these individuals were employees of the Defendant UPMC and would have been reasonably perceived by them as such, as did the Plaintiffs John and Jennifer Shaffer.

47.    A Certificate of Merit pertaining to Fadi Bader Sweiss, MD is attached hereto and incorporated herein as Exhibit A.

48.   A Certificate of Merit pertaining to Kelly L. Farrell, PA-C is attached hereto and incorporated herein as Exhibit B.

49.   A Certificate of Merit pertaining to Susquehanna Physician Services is attached hereto and incorporated herein as Exhibit C.

50.   A Certificate of Merit pertaining to Brittany T. Grubb, RN is attached hereto and incorporated herein as Exhibit D.

51.   A Certificate of Merit pertaining to UPMC Williamsport is attached hereto and incorporated herein as Exhibit E.

52.   A Certificate of Merit pertaining to United States of America is attached hereto and incorporated herein as Exhibit F.

## COUNT I
## <u>PLAINTIFFS v. DEFENDANT FADI BADER SWEISS, MD</u>

53.   Plaintiffs hereby incorporate by reference paragraphs 1 through 52 as though fully set forth at length herein.

54.   Defendant Sweiss breached his duty of care for and to the Plaintiff being careless and negligent, in acting or failing to act, contrary to, deviating from and/or in violation of standard medical practice in the following respects:

      a.   Ordering then applying compression devices for his patient's lower extremities;

b.    Failing to consult with Dr. Ballehaninna regarding the need for and appropriateness of compression stockings or compression devices;

c.    Failing to order and use other clinically effective pressure pattern devices and/or practices to reduce the threat of DVT without compromising the blood flow in Plaintiff's left lower extremity;

d.    Failing to order the immediate discontinuation of any compression devices after surgery;

e.    Allowing his patient to be discharged while still wearing compression stockings;

f.    Failing to train his staff including the Defendant Farrell that any and all compression devices must be removed from a patient such as Plaintiff well before discharge;

g.    Failing to defer to and/or consult with Plaintiff's vascular surgeon regarding antiplatelet therapy pre and post-operatively;

h.    Failing to coordinate his neurosurgery with the care and treatment of Plaintiff's vascular surgeon, Dr. Ballehaninna;

i. Failing to take appropriate steps to ensure surgery would not result in the vascular compromise of Plaintiff's left lower extremity;

j. Failing to consult Dr. Ballehaninna to ensure the safest way to prevent vascular compromise during and after surgery of the Plaintiff's left lower extremity;

k. Failing to respond to phone messages and calls from employees and/or other medical care providers who were providing assistance to Plaintiff's wife including employees of Defendant United States of America who had spoken to the Plaintiff's wife regarding John Shaffer's ongoing post op complications and complaints;

l. Failing to have an effective system in place to ensure phone messages from post-op patients with complications were immediately routed to him;

m. Failing to have an effective system in place to ensure that messaging back and forth between his post-op patient, the hospital and/or the surgery center and/or his office staff would occur timely and would ensure he would be notified of post-op complications which needed his evaluation and direction;

n.   Failing to call the Shaffers and discuss their post-op complaints;

o.   To the extent he was advised the Shaffers had post-operative complaints around 10:00 p.m. the day of surgery and extending through April 7, 2021, failing to reach out to the Shaffers and/or attempt to direct or coordinate their care;

p.   Depending upon his staff to communicate post-operative complaints by the Shaffers when he knew, or should have known, the mechanism to ensure communication of serious post-operative complaints was flawed and/or defective and/or, at that time, could not perform as desired;

q.   Failing to train his staff to appropriately document calls from patients regarding post-operative complications and to ensure that he was made aware of phone calls regarding complications especially those voiced by the Plaintiff;

r.   Failing to train his employees not to allow compression stockings to stay on after surgery in the absence of a specific order therefore;

s.   Allowing his patient to be discharged from the surgery center without an effective evaluation and examination of his left lower extremity;

t.     Allowing his patient to be discharged from the surgery center while his left lower extremity was cold to touch and he was experiencing pain in his left lower extremity;

u.     Failing to appreciate the impact of compression devices on Mr. Shaffer's left lower extremity;

v.     Failing to respond to phone messages retrieved and/or participated in by office staff;

w.     Failing to appreciate the severity of the Plaintiff's post-operative complaints;

x.     Failing to intervene in the patient's post-operative care;

y.     Failing to train his office staff to advise him of serious complaints of post-operative complications by his patients.

55.     As a proximate result of the carelessness and negligence of the Defendant Sweiss, as well as the members of his staff identified herein, Plaintiff was caused to suffer severe and permanent injuries and damages including, but not limited to, injury to his nerves and nervous system as well as injury to his left lower extremity resulting in a below the knee amputation resulting in permanent deformity, significant pain and suffering, emotional distress and embarrassment as well as loss of life's pleasures, significant reduction and/or impairment of his earning capacity, loss of wages, being responsible for significant past and future

medical bills and treatment including rehabilitation; currently Plaintiff is a fall risk and the very fabric of his life has been altered by the negligence of the Defendants.

56.     The actions by Defendant Sweiss caused and/or increased the risk of injury and damage to the Plaintiff.

57.     The Defendant Sweiss utilized the Defendant Kelly Farrell and Charlie Fohringer as physician assistants to either examine, treat and otherwise care for Dr. Sweiss' patients and in that regard had to have executed a collaborative agreement pursuant to Pennsylvania law; therefore pursuant to 49 Pa. Code §18.144, Defendant Sweiss must accept full professional and legal responsibility for the performance of Kelly Farrell and Charlie Fohringer.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against Defendant Sweiss for damages in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

## COUNT II
## PLAINTIFFS v. DEFENDANT KELLY L. FARRELL, PA-C

58.     Plaintiffs hereby incorporate by reference paragraphs 1 through 57 as though fully set forth at length herein.

59.     Defendant Farrell breached her duty of care for and to the Plaintiff being careless and negligent in acting or failing to act contrary to, deviating from and/or in violation of standard medical practice in the following respects:

19

a.    Failing to remove or order removal of compression stockings post-operatively and/or to consult with Dr. Sweiss about the compression stockings prior to Plaintiff's discharge from the hospital on April 2, 2021;

b.    Failing to ensure Dr. Sweiss actually wanted compression stockings to be used on this patient and further failing to remind Dr. Sweiss this patient could be subject to vascular compromise in his left lower extremity;

c.    Failing to contact Defendant Sweiss to determine whether he wanted the compression stockings to remain on his patient after discharge in the absence of an order requiring same;

d.    Failing to ensure that any and all compression devices were quickly removed from the Plaintiff's lower extremities;

e.    Allowing Plaintiffs to leave the hospital before the compression stockings were removed;

f.    Failing to check the chart to make sure that Defendant Sweiss had issued an order requiring the continuation of compression stockings after the patient was discharged from the hospital;

g.    Violating policies and procedures of UPMC Williamsport with regard to the discharge of patients who received compression stockings during surgery;

h.    Violating UPMC Williamsport discharge instructions regarding the discharge of patients without an order for ongoing use of compression stockings;

i.    Advising the Plaintiff that the compression stockings should stay on for 24 hours;

j.    Increasing the risk of a below the knee leg amputation;

k.    Discharging Mr. Shaffer from the surgery center without adequately evaluating his left lower extremity;

l.    Allowing John Shaffer to be discharged from UPMC surgery center when his left lower extremity was cold to touch and showing signs of potential vascular compromise;

m.    Discharging John Shaffer or allowing him to be discharged when he had complaints of pain in his left lower extremity;

n.    Failing to conduct a full and complete examination or order a full and complete examination of John Shaffer's left lower extremity and/or discuss the patient's findings with Dr. Sweiss before Mr. Shaffer was discharged;

o.   Failing to ensure post-op complaints from the Shaffers were relayed and/or addressed with Dr. Sweiss and/or his staff before discharge;

p.   Failing to ensure that she or other staff members confirmed and addressed the Plaintiff's post-operative complaints with Dr. Sweiss after Plaintiff's discharge.

60.   As a proximate result of the carelessness and negligence of the Defendant Farrell, Plaintiff was caused to suffer severe and permanent injuries and damages including, but not limited to, injury to his nerves and nervous system as well as injury to his left lower extremity resulting in a below the knee amputation resulting in permanent deformity, significant pain and suffering, emotional distress and embarrassment as well as loss of life's pleasures, significant reduction and/or impairment of his earning capacity, loss of wages, being responsible for significant past and future medical bills and treatment including rehabilitation; currently Plaintiff is a fall risk and the very fabric of his life has been altered by the negligence of the Defendants.

61.   The actions by Defendant Farrell caused and/or increased the risk of injury and damage to the Plaintiff.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against Defendant Farrell for damages in an amount in excess of

$150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys'
fees and other relief as the Court deems just and proper.

**COUNT III**
**PLAINTIFFS v. DEFENDANT SUSQUEHANNA PHYSICIAN SERVICES**

62.   Plaintiffs hereby incorporate by reference paragraphs 1 through 61 as
though fully set forth at length herein.

63.    Defendant Susquehanna Physician Services and its staff members
identified herein breached their duty of care for and to the Plaintiff being careless
and negligent in acting or failing to act contrary to, deviating from and/or in
violation of standard medical practice in the following respects:

a.   Failing to have an adequate and effective post-operative phone
     system whereby the complaints of post-operative neurosurgical
     patients, such as John Shaffer, would be immediately
     transmitted or effectively transmitted to the neurosurgeon who
     performed the surgery and/or his staff and/or the neurosurgeon
     on call;

b.   Failing to train its employees, agents, contractors and/or staff
     who received telephone calls from post-op patients to ensure
     the proper questioning of the patients and the creation of
     thorough phone notes and communicate with the patient's
     surgeon so as to appropriately apprise physicians of the

problems experienced by the patient which in this case should
have led to telephone conversations between Defendant Sweiss
and the Shaffers;

c.    Failing to properly appreciate that the complaints voiced by the
Plaintiff's wife indicated that her husband was discharged with
compression stockings on his lower extremities while his
symptoms confirmed there was potential for vascular
compromise of his left lower extremity and that he needed to be
evaluated either by Dr. Sweiss or sent to an emergency room
setting immediately;

d.    Failing to advise Dr. Sweiss that John Shaffer was scheduled
for ultrasounds of his lower extremities in the afternoon of
April 5, 2021 after having been examined by CRNP Carr at
North Penn Comprehensive Health Services;

e.    Failing to reach out directly to the Shaffers because Mr. Shaffer
was having significant post-operative complications;

f.    Failing to immediately obtain results of the lower extremity
ultrasounds and act on those results;

g.    Failing to advise Plaintiffs to report the results of the
ultrasounds to Dr. Sweiss and/or his staff and afterwards failed

24

to indicate to Plaintiffs they should proceed to the nearest emergency department;

h.  Failing to advise Plaintiffs to be evaluated in an emergency department after the ultrasounds were performed;

i.  Failing to contact Dr. Sweiss to determine whether he wanted to see his patient immediately and/or send his patient to a local emergency department;

j.  Failing to appreciate the severity, seriousness and importance of these evolving post-operative symptoms and the length of time they had been evolving;

k.  Failing to advise Defendant Sweiss the Plaintiff's wife Jennifer Shaffer had called the surgery center the evening of April 2, 2021 and again on April 3, 2021 complaining about the color and temperature of her husband's left leg and otherwise failed to notify Defendant Sweiss of those complaints;

l.  Failing to train their employees not to allow compression stockings to stay on after surgery in the absence of a specific order therefore;

m.  Despite having received phone calls from the Plaintiff's wife and the Plaintiffs' PCP and being told the Plaintiff was going to

be sent for ultrasounds and that the Plaintiff ultimately had an

appointment with his vascular surgeon, Charles Fohringer

and/or others identified herein failed to piece these facts

together and/or advise Dr. Sweiss significant post-operative

complication may be occurring with his patient.

64.    As a proximate result of the carelessness and negligence of the

Defendant Susquehanna Physician Services, Plaintiff was caused to suffer severe

and permanent injuries and damages including, but not limited to, injury to his

nerves and nervous system as well as injury to his left lower extremity resulting in

a below the knee amputation resulting in permanent deformity, significant pain and

suffering, emotional distress and embarrassment as well as loss of life's pleasures,

significant reduction and/or impairment of his earning capacity, loss of wages,

being responsible for significant past and future medical bills and treatment

including rehabilitation; currently Plaintiff is a fall risk and the very fabric of his

life has been altered by the negligence of the Defendants.

65.    The actions by Defendant Susquehanna Physician Services caused

and/or increased the risk of injury and damage to the Plaintiff.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter

judgment against Defendant Susquehanna Physician Services for damages in an

amount in excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

## COUNT IV
## PLAINTIFFS v. DEFENDANT BRITTANY T. GRUBB, RN

66.     Plaintiffs hereby incorporate by reference paragraphs 1 through 65 as though fully set forth at length herein.

67.     Defendant Grubb breached her duty of care for and to the Plaintiff being careless and negligent in acting or failing to act contrary to, deviating from and/or in violation of standard medical practice in the following respects:

a.     Failing to direct removal and/or herself remove compression stockings post-operatively and/or prior to Plaintiff's discharge from the hospital on April 2, 2021;

b.     Failing to contact Defendant Sweiss or his staff to determine whether he wanted the compression stockings to remain on the patient after discharge in the absence of an order requiring same;

c.     Failing to ensure Dr. Sweiss actually wanted compression stockings to be used on this patient during surgery and further failing to remind Dr. Sweiss this patient could be subject to vascular compromise in his left lower extremity;

d.     Failing to ensure that any and all compression devices were removed from the Plaintiff's lower extremities;

e.     Allowing Plaintiffs to leave the hospital before the compression stockings were removed;

f.     Failing to check the chart to make sure that Defendant Sweiss had not issued an order requiring the continuation of compression stockings after the patient was discharged from the hospital;

g.     Violating policies and procedures of UPMC Williamsport with regard to the discharge of patients who received compression stockings during surgery;

h.     Violating policies and procedures of UPMC Williamsport regarding patient discharge with post-op complications;

i.     Advising the Plaintiff compression stockings should stay on for 24 hours;

j.     Increasing the risk of a below the knee leg amputation;

k.     Discharging the Plaintiff while his left lower extremity was cold to touch;

l.     Discharging Plaintiff while he was experiencing pain in his left lower extremity;

    m.    Discharging Plaintiff when he had symptoms that required either that a physician assistant and/or Dr. Sweiss evaluate the patient before discharge;

    n.    Discharging a patient who failed discharge criteria;

    o.    Failing to perform a full and complete examination of the Plaintiff's left lower extremity when Mrs. Shaffer voiced concerns about the condition of her husband's leg;

    p.    Failing to chart potential post-operative complications prior to discharge and otherwise alert the appropriate healthcare providers of Plaintiff's condition upon discharge.

68.    As a proximate result of the carelessness and negligence of the Defendant Grubb, Plaintiff was caused to suffer severe and permanent injuries and damages including, but not limited to, injury to his nerves and nervous system as well as injury to his left lower extremity resulting in a below the knee amputation resulting in permanent deformity, significant pain and suffering, emotional distress and embarrassment as well as loss of life's pleasures, significant reduction and/or impairment of his earning capacity, loss of wages, being responsible for significant past and future medical bills and treatment including rehabilitation; currently Plaintiff is a fall risk and the very fabric of his life has been altered by the negligence of the Defendants.

69.    The actions by Defendant Grubb caused and/or increased the risk of injury and damage to the Plaintiff.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against Defendant Grubb for damages in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

**COUNT V**
**PLAINTIFFS v. DEFENDANT UPMC WILLIAMSPORT**

70.    Plaintiffs hereby incorporate by reference paragraphs 1 through 69 as though fully set forth at length herein.

71.    At all times relevant, Defendant UPMC is vicariously liable for the acts, commissions or omissions of the Defendant Sweiss, Defendant Kelly Farrell and Defendant Brittany Grubb and Charlie Fohringer, PA and the two individuals who answered the phone and spoke to Mrs. Shaffer the evening of April 2, 2021 and April 3, 2021 fully, as though UPMC performed the acts or omissions itself; in the alternative, Defendant UPMC is responsible for the negligence acts or omissions of the Defendants Sweiss, Kelly Farrell and Brittany Grubb as well as Charlie Fohringer and the two individuals who spoke with Mrs. Shaffer by telephone after her husband was discharged from the hospital who are agents, employees, servants and contractors of Defendant UPMC.  Defendant UPMC is responsible for the conduct of the aforesaid as a matter of corporate liability.

72.     Defendant UPMC, directly and/or by and through its employees, agents, ostensible or otherwise and contractors, breached its duties and responsibilities to the Plaintiffs in:

  a.     Failing to ensure that Dr. Sweiss wanted compression stockings on Mr. Shaffer during surgery;

  b.     Failing to remove the compression stockings off of Mr. Shaffer's lower extremities after surgery;

  c.     Failing to properly examine and carefully evaluate John Shaffer's post-operative pain;

  d.     Failing to examine and evaluate the temperature of John Shaffer's left leg after surgery;

  e.     Failing to serially measure the pulses in John Shaffer's lower extremities post-operatively;

  f.     Failing to ensure that Dr. Sweiss was made aware John Shaffer had post-operative complaints of a cold left lower extremity, discoloration in his left lower extremity and pain in his left lower extremity;

  g.     Discharging the patient with instructions to maintain the compression devices for 24 hours;

h.   Failing to document a phone call from Mrs. Shaffer around 10:00 p.m. on April 2, 2021 describing her husband's post-operative complaints;

i.   Failing to refer Plaintiff to an emergency department to evaluate her husband's post-operative complaints;

j.   Failing to advise Dr. Sweiss of John Shaffer's post-operative complaints on April 2, 2021;

k.   Failing to document a phone call from Mrs. Shaffer on April 3, 2021 describing her husband's post-operative complaints;

l.   Failing to refer Plaintiff to an emergency department on April 2, 2021 and/or on April 3, 2021 to evaluate her husband's post-operative complaints;

m.   Failing to advise Dr. Sweiss of John Shaffer's post-operative complaints on April 3, 2021;

n.   Advising Plaintiff to contact her primary care physician instead of advising her to take her husband to a local emergency department;

o.   Failing to advise Plaintiffs' primary care physician to make sure that Dr. Sweiss received copies of the ultrasounds;

p.     Failing to advise Plaintiffs' primary care physician to make sure they shared the results of the ultrasounds as soon as possible;

q.     On April 5, 2021, failing to advise the Plaintiff to go to a local emergency department;

r.     On April 5, 2021, failing to advise Dr. Sweiss that the Plaintiff had ultrasounds taken and was referred to her vascular surgeon;

s.     On April 6, 2021, failing to advise Dr. Sweiss that Plaintiff had ultrasounds taken and had scheduled a visit with her vascular surgeon on April 7, 2021;

t.     Failing to advise Plaintiff to go to a local emergency department on April 6, 2021;

u.     Failing to have an effective communication system between post-op patients and physicians to timely convey post-operative complaints;

v.     Failing to document post-operative complaints by a patient and route them to the patient's surgeon, Dr. Sweiss;

w.     Failing to have policies and procedures in place to ensure that, as needed, compression devices could be removed from a patient's lower extremities and/or evaluated prior to discharge;

x.    Failing to have an adequate and effective post-operative phone system whereby the complaints of post-operative neurosurgical patients would be immediately transmitted or effectively transmitted to the neurosurgeon who performed the surgery and/or the neurosurgeon's staff and/or the neurosurgeon on duty;

y.    Failing to train its employees who received telephone calls after hours from post-op patients to ensure the proper questioning of the patients and the creation of thorough phone notes and appropriately apprise physicians of the problems experienced by the patient which in this case should have led to timely telephone conversations between Defendant Sweiss and the Shaffers;

z.    Failing to properly appreciate the complaints voiced by the Plaintiff's wife indicated he was discharged with compression stockings still on his lower extremities that there was a potential for serious vascular compromise of his left lower extremity that needed to be addressed by Dr. Sweiss or in an emergency room setting immediately;

      aa.    Failing to advise Defendant Sweiss Plaintiff's wife Jennifer

Shaffer had called the surgery center the evening of April 2,

2021 and again on April 3, 2021 complaining about the color

and temperature of her husband's left leg and otherwise failed

to notify Defendant Sweiss of those complaints;

      bb.    Failing to train their employees not to allow compression

stockings to stay on after surgery in the absence of a specific

order therefore.

73.    Defendant UPMC is also vicariously responsible for the negligence and carelessness of its agents, ostensible or otherwise, including the Defendants Sweiss, Farrell and Grubb, as well as Charlie Fohringer, PA as well as the two employees who spoke with Jennifer Shaffer on the evening of April 2, 2021 and on April 3, 2021 after her husband's surgery as described herein.

74.    As a result of the Defendants and its employees, agents, ostensible or otherwise, assigns and contractors, Plaintiffs sustained the injuries and damages identified herein.

75.    The actions by Defendant Grubb caused and/or increased the risk of injury and damage to the Plaintiff.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against Defendant UPMC Williamsport for damages in an amount in

excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

## COUNT VI
## PLAINTIFFS v. DEFENDANT UNITED STATES OF AMERICA

76.     Plaintiffs hereby incorporate by reference paragraphs 1 through 75 as though fully set forth at length herein.

77.     Kelly Carr, PA breached her duty of care for and to the Plaintiff John Shaffer being careless and negligent and acting or failing to act, contrary to, deviating from and/or in violation of standard medical practice in the following respects:

> a.     Failing to contact Plaintiff's treating vascular surgeon, the physician who had prescribed Plavix, to determine his preference regarding antiplatelet administration both pre and post-operatively for his patient John Shaffer;
>
> b.     Failing to telephone the Defendant Sweiss' office and otherwise ensure his service was made aware of the results of the post-operative ultrasounds of John Shaffer's leg;
>
> c.     Failing to advise the Plaintiffs to immediately seek help at a local emergency room upon learning of the results of the ultrasounds;

d.      Advising the Plaintiff to make an immediate appointment with her husband's vascular surgeon or if they could not see him advising her to immediately contact Dr. Sweiss and/or immediately proceed to the nearest emergency department;

e.      Failing to send the results of the ultrasounds to Dr. Sweiss and to Dr. Ballehaninna's office and to immediately request their review and response;

f.      Failing to appreciate the severity of the findings of the ultrasounds and the need for emergent evaluation;

g.      Failing to have Dr. Scott or a physician evaluate John Shaffer's left lower extremity on April 5, 2021 before sending him out to have an ultrasound;

h.      Failing to obtain the serial pulses and carefully otherwise completely examine John Shaffer's left lower extremity;

i.      Failing to appreciate the gravity of Plaintiff's post-op complications and complaints;

j.      Delaying immediate emergent care that would have salvaged the Plaintiff's left lower extremity;

k.      Failing to contact Dr. Sweiss' office to determine next steps after being advised of the results of the ultrasounds;

l.   Failing to call Dr. Ballehaninna's office and/or Dr. Sweiss' office and discuss the results of the physical exam of Mr. Shaffer's legs as well as the results of the ultrasounds;

m.   Failing to appreciate that Mr. Shaffer had already had symptoms for three days by the time he was seen by Kelly Carr;

n.   Failing to contact doctors and/or physician assistants at Defendant UPMC to ensure they were well aware of John Shaffer's post-op complaints and post-op condition;

o.   Increasing the risk of a below the knee leg amputation.

78.   As a result of the negligence of the Defendant United States of America, by and through its employees, agents, ostensible or otherwise and contractors, Plaintiffs sustained the injuries and damages identified herein.

79.   The conduct of Kelly Carr, PA increased the risk of injury, loss and damage for the Plaintiffs.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against Defendant United States of America for damages in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

## COUNT VII
### PLAINTIFF JENNIFER SHAFFER v. DEFENDANTS

80.     Plaintiffs hereby incorporate by reference paragraphs 1 through 79 as though fully set forth at length herein.

81.     As a direct and proximate cause of the Defendants' conduct, as aforesaid, Plaintiff Jennifer Shaffer has been deprived of services, consortium and companionship of her husband John Shaffer.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment against all Defendants for damages in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars) and for interest and attorneys' fees and other relief as the Court deems just and proper.

### TRIAL BY JURY IS DEMANDED

Plaintiffs request a trial by jury on all the issues raised by the Complaint.

Respectfully Submitted,

LOWENTHAL & ABRAMS, PC


/s/ Dennis M. Abrams
DENNIS M. ABRAMS, ESQUIRE
PA ID No.: 40184
555 City Line Avenue, Suite 500
Bala Cynwyd, PA 19004
Phone: (610) 667-7511
Fax: (610) 667-3440
dennis@lowenthalabrams.com
Attorneys for Plaintiffs